BROWN *v*. STATE OF INDIANA.

[No. 25,908.   Filed March 6, 1934.]

T. *Ernest Maholm,* for appellant.

*James M. Ogden,* Attorney-General, and *Merl M. Wall,* Deputy Attorney-General, for the State.

MYERS, J.—Appellant was indicted, tried, and convicted by a jury in the court below of murder in the second degree. Sec. 2415, Burns 1926, §10-3405, Burns 1933, §2407, Baldwin's 1934, Acts 1905, p. 584, §350. Judgment and sentence to imprisonment for life. His motion for a new trial was overruled and this ruling is the only error assigned.

Appellant first insists that the verdict of the jury was contrary to law, in that it was not sustained by sufficient evidence. In support of this contention he asserts that the record fails to show there was some evidence to support each essential element of the offense charged. He has not pointed to a single unproved fact claimed to be necessary to sustain the verdict. This he should do if we are to have his views on wherein the evidence fails to make out a case. *Young* v. *State* (1922), 192 Ind. 666, 138 N. E. 258; *Hartman* v. *State* (1924), 195 Ind. 327, 145 N. E. 310; *Nelson* v. *State* (1928), 200 Ind. 292, 163 N. E. 95.

Appellant has not, in his brief, as claimed by appellee, set forth a condensed recital of the evidence in this case,

as required by Rule 22, Cl. 5, Rules of the Supreme and Appellate Courts, in force at the time this case was briefed, nor has appellee invoked Rule 23. The evidence before the jury is properly in the record and the briefs frequently refer to it in support of the various contentions. Thus we are advised generally of its nature and probative value. That information and the severity of the punishment inflicted is our justification for looking to the evidence in the record, when the question for decision calls for it. In our judgment, the evidence in this case would justify a verdict of manslaughter only. There was no evidence before the jury showing anger, hatred, or purpose of revenge or any other unlawful motive by appellant toward his wife prior to the few seconds of time in which the homicide occurred. The charge is a malicious killing, and to sustain it that fact must be attended with such circumstances as carry in them the plain indications of a heart regardless of social duty, and fatally bent on mischief. Here the showing of malice, as generally understood in this class of cases, if at all, is a mere inference from the circumstances immediately connected with the unlawful act voluntarily inflicted and, in our opinion, upon a sudden heat. Since there might possibly be a difference of opinion on that question as the result of the weight to be given certain items of evidence and the exclusion of all other evidence, much of which is uncontradicted, we would not be at liberty, on the evidence alone, to substitute our conclusion for that of the trial court and jury.

Appellant next insists that the court erred in overruling his motion at the close of the State's case to peremptorily instruct the jury to return a verdict of not guilty. This motion was predicated upon the fact that the prosecuting attorney had failed to file a written "general denial" to his pleaded

defense of unsoundness of mind. To support this contention he insists that the word "may" should be construed as "must" following the words "and the prosecuting attorney" in §2231, Burns 1926, §9-1701, Burns 1933, §2215, Baldwin's 1934, Acts 1913, p. 774, which reads as follows: "When the defendant in a criminal cause desires to plead that he was of unsound mind at the time the offense charged was committed, he himself, or his counsel, must set up such a defense specially in writing, and the prosecuting attorney may reply thereto by a general denial in writing." To this statute he submits the proposition taken from the case of *Supervisors* v. *United States* (1866), 71 U. S. (4 Wall.) 435, 446, that "When a statute directs the doing of a thing for the sake of justice or the public good, the word *may* is the same as the word *shall.*" He makes the point that his defense was insanity at the time the alleged offense was committed. Having pleaded this defense and offered evidence in support thereof, and there being no denial in writing to his plea, all evidence to the contrary was improperly admitted for the reason there was no issue formed making rebuttable evidence admissible. Furthermore, he claims that since his only defense was insanity, the word "may" used in the act should be construed as "shall" or "must," for the reason the statute contemplates the submission of the sanity question to the jury separately from his plea of not guilty by an issue in writing tendered by the prosecuting attorney.

Counsel for appellant has presented a very ingenious argument in support of his insistence. In addition to the last above cited case, he calls our attention to the cases following: *Nave* v. *Nave* (1855), 7 Ind. 122; *Bansemer et al.* v. *Mace et al.* (1862), 18 Ind. 27; *Howell* v. *State* (1919), 77 Fla. 119; *State* v. *Hortman* (1904), 122 Iowa 104; *Boswell* v. *Big Vein Coal Co.*

(1914), 217 Fed. 822; and *Strong* v. *Day* (1916), 61 Okla. 166. All of these cases approve the same general principle announced in the case of *Supervisors* v. *United States, supra.* That case originated in the Circuit Court of the United States for the Northern District of Illinois, and the remedy sought was mandamus to compel the Supervisors to levy a tax sufficient to pay a judgment, interest, and costs in favor of a state bank, relator, and when collected to apply it accordingly. That action involved a statute of Illinois wherein "The Board of Supervisors under township organization, in such counties as may be owing debts which their current ·revenue, under existing laws, is not sufficient to pay, may, if deemed advisable, levy a special tax . . ." On the one side it was insisted that the authority—*"may, if deemed advisable"*—thus given involves no duty, but the court did not concur in that view. It held that the language of the act *"may, if deemed advisable,"* although permissive in form, is in fact peremptory, for the reason the legislature did not mean to defeat a demand of right or prevent justice. "It (the authority) is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless."

In the Nave case, which was a proceeding for a divorce, and a statute providing that depositions *may* be taken or the witnesses *may* be examined orally · in court, the question arose as to the admissibility of plaintiff's depositions. The court said: "The cases in which the word 'may' imports 'shall,' are those in which public interests and rights are concerned, and where the public or third persons have a claim *de jure* that the power should be exercised." Held, that no such rights were involved in that case, the statute merely giving the parties litigant a privilege which they might exercise or not at their election.

In *Board of Commissioners of Vigo County* v. *Davis*

*et al.* (1893), 136 Ind. 503, 507, 36 N. E. 141, the court said: "The application of the rule that *may* is to be interpreted for *shall* depends on what appears to be the true intent of the statute, and the ordinary meaning of the language must be presumed to be intended, unless it would manifestly defeat the object of the provision. Sedgwicks Con. Stat. and Const. Law, p. 377; *Minor* v. *Merchants' Bank*, 1 Peters, 44."

We are not convinced that the cases cited by appellant, or the reasoning he draws therefrom, are controlling or applicable to the case at bar. In the instant case it is not made to appear that the failure of the prosecuting attorney to file a general denial would have any tendency to prejudice the jury against either the appellant or his defense; nor is it shown, nor can we conceive wherein such failure would limit any right of appellant or effect the probative force of his evidence, or thereby advance the interests of the State. Appellant has not pointed to any particular benefit or remedy denied him by reason of such omission of the prosecuting attorney, and since the burden is upon him so to do, and to overcome the presumption of a fair and impartial trial, the conclusion must follow that reversible error is not thereby shown. *Wishmire* v. *State* (1924), 196 Ind. 104, 147 N. E. 278; *Osborn* v. *State* (1926), 199 Ind. 44, 154 N. E. 865; *Hickman* v. *State* (1931), 203 Ind. 93, 177 N. E. 837.

Causes Nos. 6, 7, and 8 relied on for a new trial present questions upon the admission of certain testimony of witnesses for the State in her original case. ██ Robbin J. Taylor, a detective, who obtained appellant's written confession that he killed his wife, was permitted to testify that in a general conversation, after the confession was concluded, appellant said he had lived with a woman in Oklahoma for several years and had children by her. Motion to strike

out this answer for the reason "it tends to attack defendant's character or reputation, which is not now in issue." The motion should have been sustained, unless the answer was admissible upon other grounds. That character of evidence, when the foundation therefor is laid, is admissible for the purpose of showing motive, and the court should so limit it by an instruction to the jury. *Porter* v. *State* (1909), 173 Ind. 694, 91 N. E. 340.

The undisputed evidence shows that appellant and the deceased were married on June 15th and the homicide occurred on the following August 17th; that appellant had resided continuously in Indianapolis for at least five years immediately prior to the alleged homicide, and there is no intimation in the evidence that he had seen or communicated with the Oklahoma woman during that period. No evidence has been called to our attention and we have been unable to find any which tends in the least to show lack of affection or anything other than the highest regard by appellant for his wife, and no disregard of his conjugal relations until practically the moment of the shooting and homicide. While appellant's reason for his motion to strike is not as full and complete as we would like to see, yet, when it is reasonably construed, it is sufficient to inform the court that such evidence, remote as it was, would tend to furnish an opportunity for various inferences, as well as to degrade the prisoner before the jury. This testimony standing alone, was not admissible to show motive, or for any purpose. It was before the jury and its effect, great or small, was not other than prejudicial to the prisoner. The instructions of the court are not here, but any that might have been given on this subject other than to withdraw this testimony from the jury, would have been erroneous. It does not affirmatively appear from the record that the ruling now in question was harmless, nor has the State in any man-

ner attempted to meet the burden resting upon her to show by the record that no injury resulted. *Miller* v. *State* (1910), 174 Ind. 255, 259, 91 N. E. 930, and cases there cited; *Levi* v. *State* (1914), 182 Ind. 188, 196, 104 N. E. 765.

This being a close case on the question of the offense proved, it becomes our duty to be able to say from the record that the ruling of which appellant complains was not a material one, and this we cannot do.

From the undisputed evidence it appears that appellant and his wife, on the evening of August 17th, in his automobile drove to Hoffman's Dance Hall in Indianapolis where, for a time, they engaged in dancing. He then, with one Toy Pennington, left the hall and went to his automobile, and while therein seated, as stated in his confession, at about 10:30 o'clock, his wife left the hall with a man who accompanied her to a bus, which they boarded, he paying her fare. He learned from the maid at the hall that his wife had gone home. He then said "Good night" to Pennington, got in his car, and on his arrival home he claims to have seen a man on his front porch who ran through the house and out the back door. Toy Pennington, a witness for the State, in his evidence in chief, after stating that he did not see appellant's wife get on the bus with another man, was permitted to relate, over objection, a conversation had about two months prior to the trial between himself and Horace Brown, a brother of appellant. The court, in overruling the objection, emphasized the importance of the testimony by the statement: "It is also one (referring to the question) the Court is interested in as a matter of subornation of perjury." The conversation which the witness was permitted to give was that his brother came to see him and wanted him to say that he saw some man get on the bus with appellant's wife, and that he

refused to so testify. From this conversation and the court's remark, the jury might reasonably have drawn an inference that appellant's brother sought to have the witness corroborate untruthfully appellant's statement in his confession that his wife was accompanied home from the dance by another man. The supposed conversation took place when appellant was in jail and not in his presence or hearing. There is no evidence whatever tending to show that appellant or any other person to his knowledge, instance, or request was authorized to manufacture evidence for use in his defense. While the brother denied having any such conversation, yet which of the two witnesses, if either, did the jury believe? Hence, we have a collateral matter injected into the case besides a certain asserted activity on the part of appellant's brother subjecting him, if anything, to criticism, but nevertheless his activity, if believed, might be the basis of an inference exceedingly detrimental to certain parts of appellant's explanation of what actually occurred on the evening of the homicide. The conversation between the witness and appellant's brother, under the circumstances here shown to exist, is within the rule of hearsay, and was not admissible as evidence against the accused. *Blum* v. *State* (1925), 196 Ind. 675, 680, 148 N. E. 193; *Houston* v. *State* (1931), 203 Ind. 409, 180 N. E. 582; *Good* v. *State* (1878), 61 Ind. 69.

We cannot say that it had no weight with the jury, or that it did not have any material effect on the verdict.

For the reasons stated, we have reached the conclusion that justice in this case requires that appellant be granted a new trial.

Judgment reversed, with instructions to the court below to grant appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

It is further ordered that the clerk of this court make and certify to the warden of the Indiana State Prison the usual order for the return of appellant to the custody of the sheriff of Marion County, Indiana.