HOUSTON v. STATE OF INDIANA.

[No. 25,918.   Filed March 30, 1932.]

*Robert G. Miller* and *Edwin Corr,* for appellant.

*James M. Ogden,* Attorney-General, and *V. Ed Funk,* Deputy Attorney-General, for the State.

TRAVIS, C. J.—The jury, to which this case was tried, returned its verdict in the following language: "We, the jury, find the defendant guilty as charged and that he is 59 years of age." Upon this verdict, the court made its judgment in the following language: "It is therefore by the court ordered and adjudged that the said defendant for the offense by him committed be imprisoned in the Indiana State Prison for a period of not less than two (2) years nor more than twenty-one (21) years, and that he pay and satisfy the costs and charges herein taxed at $. . . . . ."

Upon his appeal, appellant assigns as reversible error the action of the trial court overruling his motion for a new trial. The causes for a new trial in the motion, which are presented as errors on appeal, are (a) for the overruling of objections to questions

which elicited evidence; and (b) in overruling motions to strike out evidence; (c) error of the court in refusing to instruct the jury during the progress of the trial that they were not to consider certain evidence; (d) error of the court in refusing to grant a new trial on account of newly discovered evidence; and (e) that the verdict of the jury is not sustained by sufficient evidence.

The trial of this cause was upon the theory that appellant had committed the crime of incest by sexual cohabitation with his stepdaughter, which is presumed to be based upon an affidavit charging the crime.

The first specific error of the court has to do with overruling appellant's objection to appellee's question to one Seba Houston. The foundation for the objectional question is the question and answer as follows: Q. "I will ask you if on the morning of the sixth of December, 1929, if you didn't tell Mrs. Ray Skirvin and Scott Long and Mr. Grant, Arra Kaserman and Raymond Skirvin that Jim Houston went into the room where your daughter was and attempted to have intercourse with her." A. "No, sir, I never."

The above question was asked witness for the defense, Seba Houston, on cross-examination by the State. In rebuttal, the State asked its witness Arra Kaserman the following questions and answers, which include and lead up to the objectional question:

Q. 1. "You are the same lady that testified yesterday?"

A. 1. "Yes, sir, the grandmother of the little girl."

Q. 2. "How soon after the 5th of December did you talk with Mrs. Houston, the next morning or the next afternoon, was it?"

A. 2. "Was the Sixth on Saturday when I took the little girl home?"

Q. 3. "The Sixth was Friday."

A. 3. "No, I didn't see her on Friday; I talked to her on Saturday."

Q. 4. "I will ask you where did you talk with her?"

A. 4. "Right in her house."

Q. 5. "I will ask you at her house on the Seventh of December, 1929, what conversation, if any, you had with her in regard to a transaction that had taken place on the night of the Fifth?"

"To which question the Defendant objects for the reason, that the conversation called for is hearsay; is not proper rebuttal, and does not sustain any issues on the part of the State, and no proper foundation is laid as impeachment." The court overruled the objection and granted appellant an exception.

A. 5. "She told me she wanted me to take the little girl. That Jim had got in bed with her, and that he was going to rape her, but she didn't exactly say he did, but she said he got in bed with her, and wanted me to take the child and take it away, and I told her I wasn't able to but I would try to get it a home, and I took the child right from her home and brung it to Mr. Grant."

It develops from the evidence that Seba Houston is the mother, and Arra Kaserman is the paternal grandmother, of the stepdaughter. It is evident from the questions and answers quoted that the mother and grandmother, between whom the conversation occurred, were in no way connected with the defendant, but were third parties, and that the conversation was not in the presence or hearing of the defendant. Conversations and statements of third parties, which conversations were not made in defendant's presence or hearing, and which are not shown to have been a part of the res gestae, are not admissible to elicit evidence against the accused. *Hampton* v. *State* (1903),

160 Ind. 575, 576, 67 N. E. 442; *Good* v. *State* (1878), 61 Ind. 69, 72; *Binns* v. *State* (1877), 57 Ind. 46, 26 Am. Rep. 48.

The objectional question shows by its face that it was not a question to impeach testimony given by another witness. The objectional question merely called for a conversation. Concerning the objection that no proper foundation is laid for impeachment, the question does not elicit an answer, yes or no, concerning whether a certain conversation occurred, or had taken place, between the witness and Seba Houston at a certain time at a certain place, and was on this account objectional, if the question were intended by its answer thereto to impeach witness Seba Houston. *Miller* v. *State* (1915), 183 Ind. 319, 321 (4), 109 N. E. 205. The answer to the objectional question plainly showed the incompetency of the question to gain lawful evidence.

A similar set of questions was asked witness, Lillie Skirvin, by the State in rebuttal on direct examination, which elicited from the witness a conversation between her and Seba Houston in the absence of the defendant. The same objection was made by the defendant to this question as to the question put to witness Arra Kaserman, which objection was overruled, and a similar answer was given to the question which delineated evidence of the conversation damaging to the defendant. Counsel for the State, in reply to the court, said the purpose of the question is for impeachment. The question was not a proper impeaching question. The objection should have been sustained. Appellant moved to strike out the answer given by Lillie Skirvin, which was overruled by the court. The answer should have been stricken out. Similar questions were asked witnesses Scott Long and Raymond Skirvin as were asked

witnesses Arra Kaserman and Lillie Skirvin, to which the same objection was made and the objection overruled. The objection should have been sustained.

Appellee makes the point in its brief, with reference to these questions, that, in cases where it is manifest that a fair and impartial trial has been had, and the judgment is just on the merits, the court, as required by statute, will disregard errors which have not prejudiced the substantial rights of the defendant and will suffer the judgment to stand. In the argument appended to appellee's brief, these alleged errors are confessed, but the State contends that the correct result was reached, and that the cause ought not to be reversed because of intervening errors. The only instance in the evidence of the fact of a sexual connection between the defendant and the stepdaughter was by the answer "yes," by the stepdaughter to a leading question on direct examination, and the answer to the next question was a denial of that fact. Upon the briefs and the record of the evidence, we are of the opinion that the evidence given by the third parties concerning conversations between them during the absence of the defendant was not such but that it might have had an effect, upon its consideration by the jury, in reaching the verdict. The evidence given by the stepdaughter upon direct examination is not enough to overthrow the rule of evidence that, where incompetent evidence is admitted, it will be presumed to have been prejudicial. *Davis* v. *Cox* (1912), 178 Ind. 486, 493, 99 N. E. 803; *Underhill* v. *State* (1916), 185 Ind. 587, 592 (8), 114 N. E. 88.

Appellant maintains that the court committed reversible error in refusing a new trial on account of newly discovered evidence. His own affidavit and the affidavits of three physicians are in the record by bill of exceptions in support of the motion

for a new trial. The affidavits of the physicians are to the effect that, since the trial of this cause, they have examined the stepdaughter and, in their opinion, the stepdaughter had never had sexual intercourse. Appellant states the fact, in support of this error, as to the use of due diligence to obtain the evidence, that the stepdaughter, during all the time between December 5, 1929 and the date of the trial, was kept by her paternal grandmother and that he could not see her; that after the trial she returned to live at home, and that then she was examined by the three physicians. Appellant might have requested the stepdaughter, at some time during the trial, to submit to an examination of her person by medical experts, which he did not do. She was under no legal obligation to assent to the request, if made, and to submit to such examination. Appellant did not request the court to compel the stepdaughter, by its order, to submit to an examination of her private person by medical experts; and, if such a request had been made, it has been held that in a case of rape and cognate offenses, it may well be doubted whether the court has power to order the person upon whom the crime was committed to submit to such an examination and inspection, in the event of her refusal to submit to such examination and inspection upon request. *McGuff* v. *State* (1889), 88 Ala. 147, 7 So. 35, 16 Am. St. 25, 28, 29. Diligence is not shown to obtain the evidence presented by the motion for a new trial, by the failure to request the stepdaughter, at and during the trial, to submit to such an examination and inspection of her private person. She might have submitted to such examination, if a request had been made. The action of the court overruling the motion for a new trial, upon the cause of newly discovered evidence, was not error.

In the event a new trial, we deem it necessary and

pertinent to call attention to the transcript of the record in this case, and the briefs. The affidavit ██ upon which the appellant was tried, as it appears in the exemplified transcript of the record, does not charge the crime of incest, nor any other crime. In the statement of the record in appellant's brief, this affidavit is not in the words of the affidavit set forth in the record; but the affidavit stated in appellant's brief does not allege the criminal offense of incest, nor any other criminal offense. It will be noted, at the beginning of this opinion, that the verdict merely finds the defendant guilty as charged. §2317 Burns 1926. The question arises whether or not the charge made in the indictment is aided by the verdict. Where there is a failure to allege a criminal offense in the indictment, information or affidavit, by an entire omission of an essential element thereof, an objection to the rendering of judgment is sufficient. If all the facts alleged in an indictment, information or affidavit, may be true and yet constitute no offense, a verdict of guilty does nothing more than to verify the facts charged, and, if the facts charged do not show the defendant guilty, the defendant cannot be considered as having violated the law. *State* v. *Godfrey* (1845), 24 Me. 232, 41 Am. Dec. 382; *United States* v. *Ford* (1888), 34 Fed. 26.

Appellant did not challenge the affidavit which sought to charge the offense by a motion to quash, neither did he challenge the affidavit nor the verdict thereon by a motion in arrest of judgment. For that reason, no opinion is expressed and no decision made which concerns the fatal defects of the affidavit which seeks to charge the offense set forth in the exemplified transcript of the record.

The admission of the evidence over objection and the refusal of the court to strike out such evidence over objection, which had to do with conversations and state-

ments by and between third parties in the absence of the defendant, constitute reversible error. The motion for a new trial should have been sustained. This cause is remanded to the trial court, and it is ordered that the motion for new trial be sustained.

Judgment reversed.

Martin, J., concurs in the conclusion.