CAVENEY *v.* STATE OF INDIANA.

[No. 26,481. Filed October 20, 1936.]

*Thomas F. O'Mara,* and *Thomas P. Gallagher,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, and *Caleb J. Lindsey,* Deputy Attorney-General, for the State.

TREMAIN, J.—The appellant was indicted, tried and convicted in the court below on a charge of murder in the second degree for killing Sam White. The court rendered judgment on the verdict of the jury that he be imprisoned in the state prison for life. A motion for a new trial was overruled. The errors presented to this court are predicated upon that ruling.

The appellant assigns error of the trial court in the admission of certain testimony of the sheriff of Vermillion County, who testified as a witness in chief for the state. In his examination he stated that he arrived upon the scene shortly after the shooting. Over objection of the appellant he was permitted to make answers to questions as follows:

Q. "Did you have any information about who had killed him? (Referring to Sam White.)
A. "Yes."
Q. "Who were you informed had killed him?"
A. "John Caveney."

Additional testimony along the same line was given by the sheriff. Appellant objected to the questions and moved to strike out the answers upon the ground that a witness may not testify to information that he had received from others, there being no showing that such conversation or information was had or obtained in the presence of the appellant; that the same was hearsay evidence, prejudicial and incompetent.

The appellant denied the killing. Several witnesses testified that at the time he was in another place with a building between him and decedent, and that it was im-

possible for him to have committed the act. On the other hand several of the state's witnesses testified that appellant shot Sam White. Many persons were present at the time of the trouble. There is a sharp conflict between the testimony of the witnesses for the state and the appellant as to who did the shooting.

That the testimony given by the sheriff was hearsay and was with reference to a material issue, namely, the fact of the homicide and the identity of the appellant, cannot be denied. Heresay evidence of this character is held to be prejudicial and incompetent. *Good* v. *State* (1878), 61 Ind. 69; *Houston* v. *State* (1932), 203 Ind. 409, 180 N. E. 582; *Brown* v. *State* (1934), 206 Ind. 223, 189 N. E. 133; *Bryant* v. *State* (1933), 205 Ind. 372, 186 N. E. 322; *Diblee* v. *State* (1931), 202 Ind. 571, 177 N. E. 261; *Sams* v. *State* (1924), 195 Ind. 497, 145 N. E. 773; *Myers* v. *State* (1922), 192 Ind. 592, 137 N. E. 547.

The state takes the position that where the sheriff of the county went to the scene of the crime one-half hour after its commission and there learned that the appellant had committed the murder, it was not error to permit him to testify to that effect where other evidence showed the appellant committed the crime charged, and relies upon the following authorities: *Shockley* v. *State* (1924), 194 Ind. 321, 142 N. E. 850; *Leach* v. *State* (1912), 177 Ind. 234, 97 N. E. 792; *Dillon* v. *State* (1924), 194 Ind. 600, 142 N. E. 643; *Coff* v. *State* (1921), 191 Ind. 416, 133 N. E. 3; *Wolfe* v. *State* (1929), 200 Ind. 557, 159 N. E. 545; *Lee* v. *State* (1922), 191 Ind. 515, 132 N. E. 582.

These authorities are distinguishable from the facts in this case, since the alleged erroneous testimony was held harmless on the ground that the case against the defendant was established by uncontradicted evidence. Here the fact of the killing is contradicted and denied.

The distinction is obvious in *Shockley* v. *State, supra,* wherein the court said:

"The only evidence in the trial of the cause was the testimony of witnesses on behalf of the state. This testimony was not in any manner contradicted . . ."

In *Leach* v. *State, supra,* the court said (p. 239) :

"No evidence was given on behalf of appellant. The evidence given on behalf of the State, direct and circumstantial, shows, without conflict, that appellant . . ."

In *Dillon* v. *State, supra,* the court pointed out, in its recital of the facts and the application of the law, that the evidence admitted, though incompetent, related to elements in the case which were established "by uncontroverted competent evidence. . . . In answer to the contention, it is enough to say, that incompetent evidence of facts, proven by undisputed competent evidence, is harmless."

In *Coff* v. *State, supra,* the court said (p. 418) :

"Appellant did not file a reply brief, and has not pointed out any evidence tending to dispute that above referred to, or any from which the jury could have believed that appellant did not do the acts charged. And if it was proved by undisputed evidence which was competent that he did those acts a judgment of conviction should not be reversed, even if it appears that incompetent evidence tending to prove the same facts was also admitted."

To the same effect is *Wolfe* v. *State, supra,* wherein the court said (p. 463) :

"The admission of incompetent evidence to prove a given fact will be treated as harmless when the same fact is fully established by competent evidence that is not contradicted."

In *Lee* v. *State, supra,* the appellant himself testified

to the facts embraced in the alleged incompetent evidence, to the admissibility of which he objected, and for that reason the court held that there was no error in receiving it.

From the authorities cited it clearly appears that the rule in respect to the admission of incompetent testimony, which otherwise would be reversible error, is regarded as harmless only where there is other competent uncontroverted testimony establishing the issue involved. The sheriff of the county was permitted, over the objection and exception of appellant, to testify in reference to material issues, the fact of the homicide and the identity of the slayer. He gave this testimony not upon facts known personally to him, but upon statements made by others to him out of the presence of appellant. Upon those two issues the evidence was contradictory. Under such circumstances hearsay evidence cannot be heard. It was prejudicial to the appellant, and constituted reversible error.

Upon the trial the state introduced evidence to show that soon after the killing the appellant fled from the scene to a place of hiding. The defense introduced witnesses and propounded to them, on direct examination, questions of which the following is illustrative:

"Did you hear Beresford tell the Defendant it was better on account of the crowd shouting at him and for his safety to leave?"

The court refused to permit this and similar questions to be answered. All of these questions and the proffered answers were to the effect that Beresford and others advised Caveney to leave the premises.

It is contended by appellant that he had the right to put before the jury an explanation of his flight consistent with his innocence, and the refusal of the court to hear this evidence was prejudicial to his rights. The

state contends that the exclusion of the proffered testimony was harmless because already there had been introduced evidence of a like character. An examination of the record discloses that the witnesses, referred to by the state, had testified concerning a mob which had assembled at that place before the shooting and to general threatening remarks made at that time. None of the testimony admitted referred to threats made after the shooting. The questions seeking to disclose what was said after the shooting and threats directed to appellant personally were questions which the court refused to permit to be answered. The record does not sustain the state in its contention that the subject had been covered fully by other testimony.

Therefore, the question remains that since the state had been permitted to prove the appellant's flight as evidence of the fact of guilt, is the appellant entitled to explain his flight, both by proving threats directed to him personally, and the advice of friends urging him to leave the scene? The fact that a defendant hastily leaves the scene of action where the offense was committed may be evidence of guilt if the same is done under a consciousness of guilt or for the purpose of averting arrest. Flight by defendant for other reasons or purposes may not be evidence of his guilt. He may show that he fled on account of fear or mob violence, or on the advice of friends, and may prove any circumstance to show that his flight was consistent with his innocence. It was stated by this court in *Batten* v. *State* (1882), 80 Ind. 394, at page 401, in discussing the flight of the defendant, that:

"It was competent for the purpose of aiding the jury in properly determining the weight to be attached to the circumstance of the appellant's flight. What inference shall be drawn from such an act depends in a very great degree upon the circum-

stances, surrounding the accused. Dr. Wharton says: 'In all cases the circumstances explaining or excusing flight are to be taken into consideration.' "

It is a general rule of law that a defendant is entitled to the benefit of any explanation of his flight consistent with his innocence, 25 A. L. R. 903, and cases there collected.

Since the state had been permitted to introduce evidence showing the flight of the appellant, it was entirely proper for him to introduce in evidence any facts to show that the flight was consistent with his innocence. The offered testimony bore directly upon the question that a mob was making personal threats against the appellant and he left the scene of action upon advice of friends who were with him at that time. Certainly he was entitled to have this testimony go to the jury as an explanation of his leaving the scene. It was error to reject it.

The court instructed the jury, over the objection of the appellant:

"You are instructed that the fact, if it be a fact, that the defendant, John Caveney, fled or concealed himself soon after the commission of the offense as charged in the indictment in this case, is a circumstance to be taken into consideration by the jury."

The appellant thereupon asked the court to instruct the jury that in determining whether or not the defendant left the scene of action for the purpose of evading punishment or escaping from the law, "you may take into consideration the fact, if it be a fact, that the defendant appeared in public openly at the place to which the defendant went, and the fact, if it be a fact, that he did not leave the State of Indiana, and the fact, if it be a fact, that the defendant voluntarily surrendered himself to the officers of law on the same day of the alleged killing." There was evidence introduced upon each of

the facts referred to in the instruction. Clearly the appellant was entitled to have the jury consider these facts along with all the other evidence in the case, *Shelby* v. *State* (1920), 189 Ind. 459, 463, 128 N. E. 356. The tendered instruction should have been given.

Objection is made to the remarks of the prosecuting attorney in his argument to the jury. One statement made was:

"That this defendant, John Caveney, refused to be tried by his friends and neighbors in Vermillion County, Indiana, and had taken a change of venue from Vermillion County, Indiana, to Vigo County, Indiana."

The appellant moved the court to set aside the submission of the cause and discharge the jury from further consideration thereof on account of said remark. The motion was overruled.

The statement that the defendant refused to be "tried by his friends and neighbors" was improper. Other similar remarks were made by the prosecutor in his argument. The trial court did not instruct the jury that it should not consider the remarks of the prosecutor. It was the prosecutor's duty to represent the state of Indiana, to prosecute the case with vigor and zeal, to see that justice was done, neither that the guilty should escape, nor the innocent suffer. It was his duty to refrain from improper methods calculated to prejudice or secure wrong result as much as it was to use every legitimate means to bring about a just conviction. He should have refrained from the use of remarks made purely for the purpose of bias and prejudice.

The killing in this case occurred on the 7th of August, 1933. On the 23rd of the following January, the state caused a number of photographs to be made of the premises. The photographers and other witnesses were introduced who explained the photo-

graphs and gave detailed testimoney in reference to the same. The state propounded the following question to one photographer.

"In taking this picture, with the exception of that piece out of that gate, are the objects and the dwellings and the fences and the conditions substantially the same now out there as they were on the 7th day of August, 1933?"

The appellant's objection to the question was overruled and the witness answered, "Yes". The appellant claims that the answer to the question was contrary to the laws of nature, contrary to the physical facts of seasonal changes, and that anyone knows as a matter of common knowledge that the conditions could not be the same in January as they were in August on account of change in foliage and vegetation. This fact should be admitted by all. The question propounded asked if the conditions were "substantially" the same. Appellant was given ample opportunity to cross-examine witnesses fully upon the question of seasonal changes as affecting foliage and vegetation, and witnesses testified as to the difference in the appearance of the two seasons of the year. The objections go more to the weight of the evidence than to its competency. The fact that the pictures were made at a time remote from the killing and at another season of the year would affect the weight to be given to the photographs.

The facts in this case disclose that on the morning of the killing serious labor troubles were brewing between two factions of miners. One faction of laborers were picketing a coal mine in that vicinity. A number of questions are presented going to the question of bias, prejudice, and antagonism. It should be sufficient to say that under the circumstances, the trial court should grant to each side ample opportunity, both on direct and cross-examination, to show the bias, prejudice, and

antagonism of any witnesses introduced on either side. Upon a retrial, the trial court, no doubt, will permit ample examination of witnesses upon these matters.

The appellant has presented a number of assignments based upon the introduction and rejection of evidence and has criticized certain other instructions. In view of what has been said herein, this court is of the opinion that upon another trial the questions presented by appellant in his brief, not herein discussed, will not arise.

The judgment is reversed and the cause remanded for a new trial. The clerk of this court will issue the proper notice for the return of the appellant to the custody of the sheriff of Vigo County.